# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO IBARRA,<br><br>   Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>   Defendant. | Case No. 1:17-cv-00452-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL<br>SECURITY APPEAL<br><br>(ECF Nos. 15, 17, 18) |

## I.

## INTRODUCTION

Plaintiff Alejandro Ibarra ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from sinusitis, history of pharyngitis, hypertension, history of gastroenteritis, history of tinea corporis, history of onychomycosis, high cholesterol, gout, morbid obesity, diabetes mellitus, history of coronary artery disease, and umbilical hernia. For

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 20.)

1

the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on June 13, 2012, and a Title XVI application for supplemental security income on June 27, 2012. (AR 100.) Plaintiff's applications were initially denied on November 19, 2012, and denied upon reconsideration on January 31, 2014. (AR 34-37, 40-44, 296-299, 301-305.) Plaintiff requested and received a hearing before Administrative Law Judge Danny Pittman ("the ALJ"). Plaintiff appeared for a hearing on September 1, 2014. (AR 337-374.) On October 28, 2015, the ALJ found that Plaintiff was not disabled. (AR 16-27.) The Appeals Council denied Plaintiff's request for review on January 26, 2017. (AR 5-7.)

### A. Hearing Testimony

Plaintiff appeared and testified at the September 1, 2014 hearing with counsel. (AR 342-368.) Plaintiff was born on June 1, 1982. (AR 342.) Plaintiff completed the tenth grade and was in special education classes the entire time he was in school. (AR 344.) Plaintiff does not write that well and can barely read. (AR 344.) He can read a newspaper. (AR 345.)

Plaintiff is married and has two children, ages seven and six, who live with him. (AR 342-343.) Plaintiff lives in a house with his wife, children, stepchildren, and mother-in-law. (AR 343.) Plaintiff's wife works in a convalescent home. (AR 343.)

Plaintiff does not have any source of income other than public assistance. (AR 344.) Plaintiff has a driver's license but does not drive that often. (AR 344.) Plaintiff drives one to two days per week. (AR 344.) His wife drove him to the hearing. (AR 344.) Plaintiff has not worked since January 1, 2011. (AR 345.) Plaintiff had not done any volunteer work since that time. (AR 345.)

Plaintiff worked fulltime in 2007 for Union Cemetery Association as a gravedigger and backhoe operator. (AR 346.) Plaintiff worked fulltime for Foster Farms as a drive-on assistant in 2008 and 2009. (AR 346.) Plaintiff fed the chickens and made sure they had proper water and ventilation. (AR 346.) In 2010, Plaintiff worked fulltime for Charles Blalock & Sons. (AR

346-347.)  He palletized shingles for roofing.  (AR 346.)  Plaintiff has worked seasonally in the fields since he was a kid picking watermelons, cantaloupe, apples, and onions.  (AR 347.)

Plaintiff is unable to work because he is constant pain.  (AR 347.)  This morning he was unable to put his shoe on because his ankle was swollen.  (AR 347.)  Plaintiff is currently changing where he is receiving treatment because his doctor moved.  (AR 347.)  He is taking hydrocodone, Lisinopril, Lipit for cholesterol, and colchicine for gout.  (AR 348.)  Plaintiff takes his medication as prescribed.  (AR 348.)  Plaintiff's medication does not always control his pain.  (AR 348.)  His cholesterol has been high the last couple of weeks and they changed to a new medication, but he is pretty sure it is controlled because he checks it every morning.  (AR 348.)  Plaintiff's blood pressure is controlled on his medication.  (AR 348.)  Plaintiff's gout is not controlled by his medication because he has flare-ups that can continue for two to three weeks.  (AR 348.)  Plaintiff's hydrocodone makes him drowsy.  (AR 349.)  Plaintiff takes his hydrocodone every day.  (AR 349.)  When Plaintiff's pain is too much and he cannot bear it he will take marijuana instead of taking another pill.  (AR 349.)  The marijuana helps his pain, but once it wears off he is back to point A.  (AR 349.)

When questioned as to why his recent test results showed that he was not taking his opioid medication, Plaintiff stated that he stopped taking it for a couple of months because it made him drowsy.  (AR 354.)  The doctor told him it was fine with her if he just used the medical marijuana.  (AR 355.)  Plaintiff is not taking his opiates at this time.  (AR 360.)  He went off of them about two months ago.  (AR 361.)  Since he stopped using the opiates he is having more fatigue and stress.  (AR 366.)  He wants to do things but he cannot.  (AR 366.)

Plaintiff has not had any surgeries.  (AR 349.)  They talked about Plaintiff having bypass surgery and he went through the first process but it came to a stop.  (AR 361.)  He lost his cars and everything and could not go to the rest of the seminars.  (AR 361.)  Plaintiff was told that he had to lose more weight or they would not operate on him.  (AR 362.)  He sits on the couch and raises his hands in the air and stuff like that to lose weight.  (AR 362.)  Plaintiff is not able to do anything other than a little bit of walking on his feet.  (AR 362.)  Plaintiff has changed his diet.  (AR 363.)  He does not eat any red meat or anything that has a high level of acid.  (AR 363.)

Since he changed his diet his gout flare ups have actually increased. (AR 363.) The doctor changed his medication but he has not noticed any improvement. (AR 363.) Plaintiff also has gastritis and when he eats something spicy . . . . (AR 364.)

Plaintiff had an injection for pain about six months ago. (AR 349.) But it only worked for a minute and then it wore off. (AR 349.) Plaintiff has not had any physical therapy. (AR 350.) Plaintiff is supposed to wear a knee brace but he has not gotten it yet. (AR 350.) The doctor prescribed it two months ago because he was in too much pain. (AR 350.) Plaintiff was prescribed a cane three years ago that he uses basically every day. (AR 350.) Since he got the cane his condition has just been getting worse and worse and worse. (AR 367.) It was not as bad before he got the cane. (AR 367.) Plaintiff has not received any mental health treatment. (AR 351.) He does not drink alcohol or smoke cigarettes. (AR 351.)

Plaintiff has pain every day, all day. (AR 352.) He is in pain all the time. (AR 352.) His ankle is swollen right now and his back hurts. (AR 352.) He pain is generally located in his lower back, knees, and ankles. (AR 352.) Plaintiff uses heating pads and Icy Hot. (AR 352.) Plaintiff elevates his legs ten times a day or more for thirty to forty minutes at a time. (AR 352, 360.) Plaintiff lies on his back and elevates his legs over his chest. (AR 352.) Traveling, walking a lot, or trying to pick up something heavy will make his pain worse. (AR 352.)

Plaintiff has also had chest pain but they have not given him any diagnosis. (AR 365.) He does have asthma and uses an inhaler. (AR 365.) Even with his inhaler he has trouble breathing. (AR 365.) Plaintiff's blood pressure is pretty well controlled now. (AR 365.) It does affect him when he is out in the sun or trying to sit in his lawn chair or do some exercise, he can feel his blood pressure rise. (AR 365.)

On a typical day, Plaintiff wakes up and his wife helps him shower and sits him down on the couch. (AR 353.) The couch is a recliner. (AR 360.) Plaintiff tries to exercise sitting down with his hands. (AR 353.) That is all he does until his wife comes home from work and gets him up. (AR 353.) Plaintiff will get up and go to the restroom. (AR 353.) Plaintiff has difficulty sleeping and has been diagnosed with sleep apnea. (AR 353.) Plaintiff had a CPAP that was taken away from him. (AR 354.) He was told his insurance would not cover it

anymore.  (AR 366.)

Plaintiff does not do any household chores.  (AR 355.)  His wife and children do all the chores.  (AR 355.)  His 12 year old stepson cuts the law and does everything around the house.  (AR 355.)  Plaintiff's wife pays the bills.  (AR 355.)  Plaintiff will go to the grocery store with his wife but ends up sitting in one of the mobile wheelchairs.  (AR 355-356.)  Plaintiff's wife does most of the shopping.  (AR 356.)

Plaintiff does not go to church or clubs.  (AR 356.)  He went to a couple of movies and a restaurant a couple weeks ago.  (AR 356.)  Plaintiff last saw the Fast 7.  (AR 356.)  He ended up putting his leg over the seat to keep it elevated and they ended up going home before the movie ended.  (AR 356.)  Plaintiff does not spend any time with friends; he does not have any friends.  (AR 356.)  He hardly ever leaves the house.  (AR 356.)

Plaintiff's daughters are involved in track and he rarely goes to their events.  (AR 357.)  Plaintiff went to the mall about a year and a half ago.  (AR 357.)  Plaintiff tries to exercise by taking a couple of steps.  (AR 357.)  Plaintiff does not use a computer.  (AR 357.)  He used to enjoy working on cars but cannot do that anymore.  (AR 357.)  Plaintiff has a dog but his wife takes care of it.  (AR 357.)

Plaintiff is unable to sit for long periods of time.  (AR 358.)  Plaintiff can sit for ten, fifteen minutes or less.  (AR 358.)  Plaintiff has to switch between standing and sitting.  (AR 358.)  Plaintiff does not know how long he can stand.  (AR 358-359.)  Plaintiff can walk a little and then has to rest.  (AR 359.)  Plaintiff can only lift five pounds because of his back pain.  (AR 359.)

A vocational expert ("VE"), Stephen Schmidt, also testified at the hearing.  (AR 140, 369-372.)  The VE classified Plaintiff's past work as a packager, machine operator, Dictionary of Occupational Titles ("DOT") 920.685-078, medium, SVP 2; harvest worker, fruit, DOT 403.687-018, medium, SVP 2; laborer, poultry farm, DOT 411.687-018, medium, SVP 2; cemetery worker, DOT 406.684-010, heavy, SVP 5.  (AR 370.)

The ALJ proffered a hypothetical of an individual of Plaintiff's age, education, and past work experience who is capable of occasional lifting and carrying of 10 pounds and frequently

less than 10 pounds; stand and/or walk for 2 hours and sit for 6 hours in an 8 hours with normal breaks; requires a cane for long distances or on uneven terrain; capable of occasional balancing, stooping, kneeling, crouching, crawling, and climbing; and needs to avoid concentrated exposure to hazards. (AR 370-371.) The VE opined that this individual would not be able to perform Plaintiff's past work. (AR 371.) This individual would be able to work as an information clerk, DOT 237.367-046, sedentary, SVP 2, 11,000 jobs in California, 85,000 in U.S.; bonder, semiconductor, DOT 726.685-066, sedentary, SVP 2, 3,000 jobs in California, 22,000 in U.S.; assembly, DOT 726.684-110, sedentary, SVP 2, 3,000 jobs in California, 20,000 in U.S. (AR 371.)

The ALJ proffered a second hypothetical of same individual capable of occasional lifting and carrying of 20 pounds; stand and or walk for 1 hour and sit for 1 hours; would need to take unscheduled breaks every 2 hours up to 15 minutes and likely to be absent more than 4 times a month. (AR 371.) The VE opined there would be no work for this individual. (AR 371.) The ALJ inquired if this individual would likely be absent from work at least two days a month would there be any work. (AR 371.) The VE responded no. (AR 371.) The VE testified that this was consistent with the DOT. (AR 371-372.)

Plaintiff's attorney added to the first hypothetical the requirement that the individual need to elevate their legs above waist level at least twenty percent of the time they are seated in the six hours. (AR 372.) The VE opined that there would be no work for that individual. (AR 372.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2012.

- Plaintiff has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date.

- Plaintiff has the following severe impairments: gout, morbid obesity, diabetes mellitus, history of coronary artery disease, and umbilical hernia.

- Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally lift and carry 10 pounds, and frequently less than 10 pounds; stand and or walk for 2 hours and sit for 6 to 8 hours in a normal 8-hour workday with normal breaks. Plaintiff needs a cane for long distances and uneven terrain. He can perform occasional balancing, stooping, kneeling, crouching, crawling, and climbing, but must avoid concentrated exposure to hazards.

- Plaintiff is unable to perform any past relevant work.

- Plaintiff was born on June 1, 1982, and was 28 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

- Plaintiff has a limited education and is able to communicate in English.

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills.

- Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of this decision.

(AR 21-27.)

## C.    Medical Record

On July 16, 2009, Plaintiff was seen at the emergency room for rib pain following an automobile accident. (AR 219-226.)

On December 1, 2009, Plaintiff went to the emergency room after twisting his ankle and was diagnosed with a sprained ankle. (AR 214-215.) X-rays of the right ankle and foot were negative. (AR 217, 218.) Plaintiff had an x-ray of his right ankle on December 22, 2009. (AR 189.) Plaintiff had marked soft tissue swelling, lateral malleolar region, no fracture was identified. (AR 189.)

Plaintiff was seen on January 11, 2010, complaining of swelling in both ankles for four days and being unable to walk. (AR 269.) Plaintiff was noted to be walking with a limp. (AR 269.) Plaintiff had mild swelling in both ankles. (AR 269.)

Plaintiff was seen on January 13, 2010 for ankle pain and reported that his symptoms were improving. (AR 262.) Plaintiff had a normal examination with no swelling and good range of motion in both lower extremities. (AR 262.)

On January 20, 2010, Plaintiff presented complaining of joint pain for months. (AR 261.) Plaintiff had a normal physical examination and was encouraged to comply with treatment plan, lose weight, and referred to rheumatology. (AR 261.)

Plaintiff was seen on January 24, 2010, for bilateral ankle pain and swelling. (AR 260.) Plaintiff was noted to be ambulating slowly and in distress when walking. (AR 260.) Both ankles were mildly swollen. (AR 260.) Plaintiff was encouraged to follow a healthy diet and exercise. (AR 260.)

Plaintiff was seen on March 24, 2010, for bilateral ankle pain. (AR 259.) He had a normal physical examination. (AR 259.) His HTN was mildly elevated. (AR 259.)

On May 18, 2010, Plaintiff was seen complaining of having a sore throat for three days. (AR 258.) Plaintiff was noted to have HTN under good control and had chronic fatigue and may need a sleep study. (AR 258.)

Plaintiff was seen on June 16, 2010, for a blood pressure check. (AR 257.) Plaintiff had a normal physical examination and his blood pressure was found to be suboptimal control. (AR 257.) Plaintiff was encouraged to lose weight and was referred to weight loss seminar and sleep lab. (AR 257.)

On July 20, 2010, Plaintiff was seen complaining of lower back pain for three days and joint pain due to a gout flare up. (AR 256.) Plaintiff had a normal physical examination with his HTN noted as being under good control. (AR 256.)

On July 31, 2010, Plaintiff went to the emergency room with a sore throat. (AR 210-211.) He had a normal physical examination other than red throat. (AR 211.)

Plaintiff was seen on November 8, 2010, for pain in his right ankle. (AR 255.) His right

ankle was swollen and painful to palpation with decreased range of motion. (AR 255.) Plaintiff was diagnosed with gout. (AR 255.)

On December 13, 2010, Plaintiff was seen for a cough that had been present for a month. (AR 254.) Plaintiff was diagnosed with bronchitis. (AR 254.)

Plaintiff was seen on February 15, 2011 with a headache, cough, and vomiting for two days. (AR 188.) Plaintiff had a normal examination other than sinus pressure. (AR 188.) Plaintiff was started on medication for gout. (AR 188.)

On May 16, 2011, Plaintiff was seen for a gout flare up. (AR 187.) Plaintiff had a normal physical examination. (AR 187.) Plaintiff was referred for a gastric bypass consultation and encouraged to keep his appointment with the rheumatologist. (AR 187.)

Plaintiff was seen on June 21, 2011, complaining of a sore throat and a fever for two days. (AR 186.) Plaintiff had a normal examination other than throat findings. (AR 186.) Plaintiff was noted to have gout uncontrolled due to noncompliance. (AR 186.)

Plaintiff was seen on August 12, 2011, with a fever and had a normal examination. (AR 185.)

On August 15, 2011, Plaintiff was seen with a fever and vomiting. (AR 184.) Plaintiff had a normal physical examination and was encouraged to lose weight and change his lifestyle. (AR 184.)

Plaintiff was seen on August 19, 2011, for body itchiness. (AR 183.) Plaintiff had a normal examination other than lesions over his upper and lower extremities and torso. (AR 183.) He was diagnosed with a drug allergy. (AR 183.)

On August 23, 2011, Plaintiff was seen for pain in his left torso and sleep apnea. (AR 182.) Plaintiff had a normal examination other than abdominal findings. (AR 184.)

Plaintiff was seen on November 17, 2011, with stuffiness, cold sweats, and a cough. (AR 180.) Plaintiff had a normal examination other than lung findings. (AR 180.) Plaintiff skin was noted to be warm. (AR 180.)

Plaintiff was seen on February 21, 2012, complaining of swelling in his hands and feet and weakness for 2 days. (AR 179.) Plaintiff had a normal physical examination other than joint

1  tenderness, erythema, and mild pedal edema. (AR 179.) Plaintiff was advised to lose weight and

2  follow a low protein diet. (AR 179.) It is noted that Plaintiff missed multiple appointments.

3  (AR 179.)

4       On June 6, 2012, Plaintiff was seen complaining of left ankle pain. (AR 178.) Plaintiff

5  Plaintiff's left ankle was slightly swollen and warm with no redness. (AR 178.)

6       On July 12, 2012, Plaintiff was seen for gout and complained of severe pain in his ankles

7  and being unable to walk without pain. (AR 177.) Plaintiff was ambulating with a limp. (AR

8  177.) Plaintiff's ankles were slightly swollen and tender to palpation. (AR 177.) Plaintiff was

9  encouraged to lose weight, increase his exercise, and make lifestyle changes. (AR 177.)

10 Plaintiff was noted to have been noncompliant with his treatment plan for his gout. (AR 177.)

11 Plaintiff was not given narcotics and was using medical marijuana for his pain. (AR 177.)

12       Plaintiff was seen on August 10, 2012 to establish care with Dr. DeZubiria. (AR 176.)

13 Plaintiff had a normal physical examination. (AR 176.)

14       Plaintiff was seen on August 16, 2012 for rectal pain. (AR 175.) Plaintiff had a normal

15 examination other than a rectal hemorrhoid and a circular lesion on the right side of his face.

16 (AR 175.) Plaintiff was encouraged to make life style changes. (AR 175.)

17       On November 3, 2012, Plaintiff saw Dr. DeZubiria because his right foot was smelly.

18 (AR 174.) Plaintiff had ankle pain and edema. (AR 174.)

19       Plaintiff was seen on November 6, 2012, complaining of swelling in his feet and hands

20 for five days. (AR 173.) Plaintiff's blood pressure is noted and he has bilateral edema in his

21 legs and thick yellow toenails. (AR 173.) Plaintiff's blood pressure is noted to be uncontrolled

22 due to his noncompliance. (AR 173.)

23       On December 7, 2012, Plaintiff saw Dr. DeZubiria for back pain. (AR 172.) Plaintiff

24 had a normal examination. (AR 172.) His gout is noted to be stable. (AR 172.)

25       Plaintiff saw Dr. DeZubiria on January 2, 2013 for a refill of his pain medication. (AR

26 171.) Plaintiff had a normal examination other than some abdominal findings. (AR 171.)

27       On January 14, 2013, Plaintiff was seen complaining of abdominal pain after having been

28 constipated for three days. (AR 166.) He also complained of feeling fatigued without much

energy during the day and his wife reported that he stops breathing during the night. (AR 16.) Plaintiff was alert and oriented and had a normal physical examination. (AR 166.) His blood pressure is noted to be uncontrolled due to noncompliance with medication. (AR 166.) Plaintiff was encouraged to take his medication, lose weight and exercise more. (AR 166.)

Plaintiff saw Dr. DeZubiria on February 6, 2013 for a cough. (AR 170.) The record reflects abnormal findings in the head & neck, and extremities. (AR 170.)

Plaintiff was seen on March 14, 2013 with a cough. (AR 165.) Plaintiff had a generally normal physical examination with some warmth in the extremities. (AR 165.)

On April 8, 2013, Plaintiff saw Dr. DeZubiria to have his disability form completed. (AR 169.) There are no examination findings. (AR 169.) Dr. DeZubiria completed a residual functional capacity questionnaire this same date. (AR 160-161.) He stated that he sees Plaintiff monthly. (AR 160.) Plaintiff is diagnosed with morbid obesity and his prognosis is fair. (AR 160.) Plaintiff has chronic back pain, will impaired mobility and obstructive sleep apnea. (AR 160.) Plaintiff's symptoms are frequently severe enough to interfere with the attention and concentration required to perform simple work-related tasks. (AR 160.) Plaintiff is currently on chronic opioids for pain. (AR 160.) Plaintiff would need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15 minute break in the morning, 30 to 60 minute lunch and 15 minute break in the afternoon. (AR 160.) Plaintiff can sit 60 minutes at one time[2] and stand or walk 10 minutes at one time. (AR 160.) Plaintiff can sit 1 to 2 hours and stand/walk 1 hour in an 8 hour workday. (AR 160.) Plaintiff will need to shift at will from sitting, standing, or sitting. (AR 160.) Plaintiff will need to take unscheduled breaks every 2 hours for 15 minutes during the work day. (AR 160.) Plaintiff can lift 20 pounds occasionally. (AR 161.) Plaintiff has limitations on repetitive reaching, handling, and fingering that varies depending on the type of activity. (AR 161.) Plaintiff would likely be absent from work as result of his impairment or treatment more than 4 times a month. (AR 161.) Plaintiff is not a malingerer. (AR 161.) Plaintiff is not physically capable of working an 8 hour day, 5 days a

---

[2] The Court notes that this is the longest time that is available on the form.

week on a sustained basis. (AR 161.)

Plaintiff saw Dr. DeZubiria on April 30, 2013, for a recheck on chronic pain. (AR 168.) Plaintiff had a normal physical examination. (AR 168.) He had lost 9 pounds and his gout and back pain are noted to be stable and Plaintiff is able to walk. (AR 168.)

On May 22, 2013, Plaintiff was seen for a dry cough and complained of daily heartburn. (AR 161.) Plaintiff was alert and oriented times three. Plaintiff had a normal physical examination and was encouraged to lose weight. (AR 164.) He had an appointment with a gastroenterologist and was encouraged to keep it. (AR 164.)

Plaintiff saw Dr. DeZubiria on May 31, 2013. (AR 167.) Plaintiff is noted to be morbidly obese and has 1+ edema in the extremities. (AR 167.)

Plaintiff was seen on June 7, 2013, for a cough. He wanted to have gastric bypass surgery. (AR 163.) Plaintiff had a normal physical examination and was referred for a gastric surgery consultation. (AR 163.)

Plaintiff was seen on September 18, 2013, complaining of bilateral leg pain for two weeks. (AR 253.) Plaintiff had edema in the extremities and tenderness in his lower back. (AR 253.)

On November 5, 2013, Plaintiff was seen for a sore throat and had a normal examination. (AR 252.) He was encouraged to lose weight with no fast food or sweets. (AR 252.) On November 15, 2013, Plaintiff was seen for bilateral ankle and knee pain for one week. (AR 251.) Plaintiff complained of tingling and numbness. Physical examination was normal. (AR 251.)

On December 27, 2013, Plaintiff was seen for a medication follow up with a cough and sleep apnea. (AR 250.) Plaintiff was found to have trace edema of the extremities. (AR 250.)

Plaintiff was seen on January 17, 2014, complaining of bilateral foot pain for three days. (AR 249.) Plaintiff had mild abdominal discomfort and severe tenderness and mild bluish and red discoloration to the right ankle. (AR 249.)

On February 7, 2014, Plaintiff was seen for bilateral leg swelling of 3 to 4 days. (AR 243.) He was having difficulty exercising due to his job. (AR 243.) Plaintiff had a normal

examination other than some trace edema in the extremities.  (AR 243.)

On April 4, 2014, Plaintiff was seen with hand itchiness for a week.  (AR 242.)  Plaintiff started a job and standing was causing his pain to get worse.  (AR 242.)  Plaintiff was working in the almond field.  (AR 242.)  Plaintiff was diagnosed with eczema in his hands.  (AR 242.)

Plaintiff was seen on May 1, 2014 for bilateral knee pain after he started exercising an hour a day but doing a job so becomes so tired that it is hard to do regular exercise.  (AR 241.)  Plaintiff had a normal physical examination, except for an umbilical hernia.  (AR 241.)

On August 24, 2014, Plaintiff had a CT of his head that was normal.  (AR 203.)  Plaintiff was seen on August 28, 2014, complaining of a worsening headache after a head injury.  (AR 204-205.)  Plaintiff was putting insulation on a bus when something caught on fire.  (AR 206.)  He got up suddenly and hit the left side of his temple against a cabinet.  (AR 206.)  Physical examination was normal other than a contusion to his head.  (AR 205.)  Physical examination of the back and extremities were normal.  (AR 205.)

Plaintiff was seen on January 7, 2015, for sinus pressure, a headache and a dry cough.  (AR 237.)

On January 23, 2015, Plaintiff was seen for hypertension and chronic pain.  (AR 232.)  Plaintiff had a normal physical examination.  (AR 234, 236.)

### III.

### LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

upheld.").

**IV.**

**DISCUSSION AND ANALYSIS**

Plaintiff argues that the ALJ erred by according inadequate weight to the opinion of Dr. DeZubiria; the credibility finding is not supported by substantial evidence; and the Step 5 finds is unsupported by substantial evidence because the ALJ relied on VE testimony elicited in response to an incomplete hypothetical question.

Defendant counters that the ALJ properly weighed the medical opinions and properly evaluated Plaintiff's subjective symptom testimony. Defendant contends that the ALJ properly relied on the VE testimony to find that Plaintiff would perform work existing in significant numbers in the national economy and was not disabled.

Plaintiff replies that the ALJ should have given significant, if not controlling weight, to Dr. DeZubiria's opinion which leaves that residual functional capacity assessment unsupported by substantial evidence.

### A. The ALJ Provided Specific and Legitimate Reasons for the Weight Provided to Dr. DeZubiria's Opinion

Plaintiff argues that the ALJ erred by giving very little weight to Dr. DeZubiria's opinion because as a treating physician he was in a better position to opine as to Plaintiff's limitations than the agency non-examining physician whose opinion was afforded significant weight. Plaintiff contends that the ALJ did not analyze the required factors under 20 C.F.R. § 416.927(c). Further, Plaintiff argues that Dr. DeZubiria's treatment notes, as well of the treatment notes of the other treating sources highly support his opinion. Plaintiff also contends that the ALJ overlooked the numerous documented occasions of Plaintiff's exercise attempts despite the pain associated with physical activity.

Defendant argues that the ALJ properly provided significant weight to the opinion of Dr. Bobba because it was consistent with the medical record as a whole and the agency physician opinion is substantial evidence where it is based on other evidence in the record. Defendant argues that the ALJ provided little weight to Dr. DeZubiria's opinion because the overall record

did not support it.  Since the opinion was not well supported and consistent with other evidence in the record, Defendant argues it is not entitled to controlling weight.  Defendant contends that the ALJ properly considered that the medical evidence was inconsistent with the disabling limitations opined by Dr. DeZubiria.

Plaintiff responds that the ALJ did not consider the factors such as the length of the treatment relationship and frequency of examination, nature and extent of relationship, amount of relevant evidence that supports the opinion, the consistency of the opinion with the record as a whole, and the specialty of the treating physician.  Plaintiff argues that the opinion of Dr. Bobba cannot by itself constitute substantial evidence to reject Dr. DeZubiria's opinion.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional.  See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).  In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted).  A treating physician's opinion is entitled to controlling weight on the issue of the nature and severity of the claimant's impairment where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 404.1527(c)(2).

"If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2).  "In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician." Orn, 495 F.3d at 632.  The factors to be considered include the " '[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole.' " Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th

Cir. 2014) (quoting 20 C.F.R. § 404.1527(c)(2)-(6)).  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  Ghanim, 763 F.3d at 1161 (quoting Orn, 495 F.3d at 631).

If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record.  Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).  The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

### 1.    Overly Restrictive and Not Supported by The Medical Evidence of Record

The ALJ considered that the medical record reports gout, morbid obesity, diabetes mellitus, history of coronary artery disease, and umbilical hernia.  (AR 23.)  Plaintiff has complained of right ankle pain, bilateral knee pain, back pain, and hand and feet pain with swelling and laboratory testing showed high levels of uric acid.  (AR 23, 145, 154.)  While physical examinations were generally normal, there were findings of mild pedal edema with no lesions and slight ankle swelling and warmth.  (AR 23.)  On August 28, 2014, Plaintiff had presented to the emergency room with normal back, neurological, and musculoskeletal findings.  (AR 23, 206-208.)  Additionally, Plaintiff's most recent physical examination on January 23, 2015, showed a normal examination with no edema.  (AR 23, 231-234.)

The ALJ noted that Plaintiff has been diagnosed with gouty arthritis.  (AR 23, 164.)  He has been treated with medications, a cane for support, and referred for gastric bypass surgery.  (AR 23, 163, 164, 168, 170, 173, 174, 178, 182, 186, 187, 188.)  On July 12, 2012, Plaintiff discontinued his narcotic medication and was using medical marijuana for pain.  (AR 23, 177.)

The ALJ considered and gave little weight to the April 8, 2013 opinion of Dr. DeZubiria finding it to be overly restrictive and not supported by the medical evidence of record.  (AR 24.)  The ALJ noted that Plaintiff's physical examination showed 1+ pedal edema, but were otherwise

normal and Plaintiff had normal motor strength. (AR 24.) The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

Plaintiff first saw Dr. DeZubiria on August 10, 2012, and had a normal physical examination. (AR 176.) When Plaintiff next saw Dr. DeZubiria due to a smelly right foot he was found to have ankle pain and edema and was diagnosed with gout. (AR 174.) On December 7, 2012, Dr. DeZubiria saw Plaintiff for back pain and Plaintiff had a normal physical examination and his gout is noted to be stable. (AR 172.)

Plaintiff saw Dr. DeZubiria on January 2, 2013 for a refill of his pain medication and his physical examination was normal other than some abdominal findings that are noted to be generally benign. (AR 171.) Plaintiff saw Dr. DeZubiria on February 6, 2013 for a cough and there appear to be some right ankle findings. (AR 170.) On April 8, 2013, the date, Dr. DeZubiria completed the residual capacity form, there are no examination findings. (AR 169.)

On April 30, 2013, Plaintiff saw Dr. DeZubiria and had a normal physical examination and his gout is again noted to be stable. (AR 168.) On May 31, 2013, Plaintiff was seen by Dr. DeZubiria and had 1+ edema in the extremities. (AR 167.)

While Dr. DeZubiria opined that Plaintiff's impairments interfere with the concentration and attention required to perform simple work-related tasks (AR 160), the record does not have any findings of deficits in concentration in pace. Dr. DeZubiria also opined that Plaintiff had chronic back pain, impaired mobility and obstructive sleep apnea that caused him to be impaired, however the record is virtually devoid of any objective back findings on examination. (AR 160.) There is a single finding of tenderness in the lower back on September 18, 2013. (AR 253.) Further review of the remainder of the record from the alleged date of onset, January 1, 2011, through the issuance of the opinion, October 28, 2015, finds substantial evidence to support the ALJ's finding that Plaintiff generally had normal examination findings. (AR 163, 164, 166, 175, 180, 183, 184, 185, 186, 187, 188, 241, 242, 251.)

The record does reflect some mild pedal edema and joint tenderness on February 21, 2012, (AR 179); ankle swelling in June and July 2012, (AR 177, 178); bilateral edema in legs in

November 2012, (AR 173); edema in the extremities and tenderness in the lower back in September 2013, (AR 253); trace edema in the extremities in December 2013, (AR 250); and ankle discoloration and tenderness in January 2014 (AR 250).

In February 2014 Plaintiff reported having difficulty exercising due to his job and he was found to have some trace edema. (AR 243.) Plaintiff was seen in April 2014, and reported he was having more pain since he had started his job in the almond field and standing was causing his pain to be worse but examination findings are normal other than some head and neck abnormalities and eczema. (AR 242.) In May 2014, Plaintiff reported that he was having difficulty exercising because he was so tired from his job. (AR 241.) Again, examination findings were generally normal other than an umbilical hernia. (AR 241.)

On August 21, 2014, Plaintiff was seen in the emergency room when he hit his head while he was putting insulation on a bus. (AR 206.) Examination of Plaintiff's back and extremities were normal. (AR 205, 208.) Plaintiff had a normal gait. (AR 208.)

The most recent examination in the record, January 23, 2015, reflects normal physical examination. (AR 234.)

The ALJ properly considered that Dr. DeZubiria's opinion was overly restrictive and was not supported by the medical record. While Plaintiff points to evidence in the record that could lead to a contrary conclusion, where evidence is susceptible to more than one rational interpretation it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ. Burch, 400 F.3d at 679. The ALJ provided a specific and legitimate reason to reject the opinion of Dr. DeZubiria that is supported by substantial evidence in the record. The ALJ considered the supportability of Dr. DeZubiria's opinion with medical evidence, and the consistency of the opinion with the record as a whole in determining that it was entitled to little weight. The Court finds that the ALJ did not err in the weight provided to Dr. DeZubiria's opinion.

2.  Failure to Comply with Treatment

Plaintiff also argues that the ALJ erred by finding that he was noncompliant with treatment recommendations while overlooking numerous documented occasions where Plaintiff

1   made attempts to exercise despite his pain associated with physical activity. Defendant responds

2   that an impairment that can be controlled with medication is not considered disabling and the

3   ALJ noted Plaintiff's non-compliance with his prescribed treatment for gout as a further basis for

4   giving little weight to Dr. DeZubiria's opinion.

5           In considering the weight to afford to Dr. DeZubiria's opinion, the ALJ also considered

6   that Plaintiff was noncompliant with multiple treatment recommendations. (AR 24.) Plaintiff

7   does not specifically challenge whether failure to comply with treatment is a specific and

8   legitimate reason to reject a physician opinion, but only the factual basis for the failure to

9   comply. While Plaintiff argues references in the record to Plaintiff's attempts to exercise and

10  lose weight, the medical record referenced by the ALJ includes failure to comply with treatment

11  for gout (AR 177, 186, 243, 261), and failure to comply with treatment for high blood pressure

12  (AR 166, 173).

13          The medical record demonstrates that in January 2010 Plaintiff was provided with a

14  handout and medication and encouraged to follow a healthy diet for his gout and to comply with

15  his treatment program. (AR 260, 261.)

16          On June 21, 2011, the record notes "Gout – uncontrolled 2 to patient noncompliance.

17  Encouraged to get bloodwork done continue Indomethacin, Allopurinol." (AR 186.)

18          When he appeared on July 12, 2012 complaining of being unable to walk without pain

19  due to severe joint pain, the record states "Gout – check uric acid level – patient has been

20  noncompliant with tx plan. Encouraged to get labwork done . No narcotics given, patient using

21  medical marijuana for his pain – per patient. Encouraged to use Allopurinol daily." (AR 177.)

22          The record also demonstrates noncompliance with his treatment for his high blood

23  pressure. (AR 166, 173.) Therefore, since the record demonstrates noncompliance with his

24  treatment plan for gout and high blood pressure, the Court finds no merit to Plaintiff's argument

25  that the ALJ erred by failing to consider Plaintiff's exercise attempts in addressing Dr.

26  DeZubiria's opinion.

27      **B.      Dr. Bobba's Opinion**

28          Plaintiff argues that Dr. Bobba's opinion cannot be substantial evidence to support the

ALJ's opinion. Defendant contends that the ALJ properly assigned the greatest weight to Dr. Bobba's opinion because it was consistent with the record as a whole and is based on other evidence in the record.

The ALJ provided significant weight to the opinion of Dr. Bobba finding it consistent with the record as a whole. (AR 24.) The ALJ noted that although Plaintiff is obese he has been referred for gastric bypass surgery. (AR 24.) While Plaintiff has a history of gout, the record reflects that his gout is stable and objective findings show only a 1+ edema. (AR 24.) Further, while Plaintiff has a history of coronary artery disease there are no findings to suggest chronic heart failure. (AR 24.) Although Plaintiff has an antalgic gait and uses a cane for ambulation, physical examinations generally showed minimal findings. (AR 24.) "The weight afforded a non-examining physician's testimony depends 'on the degree to which [he] provide[s] supporting explanations for [his] opinions.' " Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citations omitted).

On October 7, 2013, Dr. Bobba, an agency physician, completed a residual functional capacity assessment. (AR 193-198.) Dr. Bobba found that Plaintiff had the residual functional capacity to lift 10 pound frequently and occasionally; stand and or walk at least 2 hours in an 8 hour work-day with a medically required hand-held assistive device for ambulation; sit for about 6 hours in an 8 hour workday; unlimited in pushing and pulling; occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, or crawl. Plaintiff had no manipulative limitations. (AR 195.) Plaintiff should avoid concentrated exposure to hazards. (AR 196.)

Dr. Bobba noted that Plaintiff is morbidly obese but is being referred for gastric bypass surgery. (AR 197.) Plaintiff has a history of gout but is stable. (AR 197.) Plaintiff had diagnosis for HYTN/CAD/CHF but no documented treatment in medical record. (AR 197.) Except for 1+ edema there are no other findings suggestive of congestive heart failure. (AR 197.) Plaintiff is noted to have an antalgic gait and use of cane, but examinations with minimal findings. (AR 197.) The April 2013 residual functional capacity questionnaire by the treating source is overly restrictive and not supported by the examinations. (AR 197.) Dr. Bobba found

that considering Plaintiff's morbid obesity, a sedentary residual functional capacity with occasional postural limits and AD for long distances and uneven terrain is most appropriate. (AR 197.)

While the contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan, 242 F.3d at 1149. Here, Dr. Bobba considered the medical evidence in the record and set forth his reasons, which included the minimal examination findings and that Plaintiff's gout is stable, to support the residual functional capacity assessment. This is consistent with the most recent findings in the medical record demonstrating generally normal examination findings including no edema. (AR 23, 205, 234, 236, 237, 241, 242.)

Dr. Bobba's opinion is consistent with the medical record which demonstrates generally normal or minimal examination findings and stable gout. The ALJ did not err in the weight provided to Dr. Bobba's medical opinion.

### C. The ALJ Provided Clear and Convincing Reasons for the Credibility Finding

Plaintiff argues that the ALJ erred by making an adverse credibility finding based on noncompliance with treatment recommendations including medications, weight loss, and exercise. Plaintiff also contends that the ALJ erred in making an adverse credibility finding based on his substituting marijuana for opioid pain medication. Finally, Plaintiff argues that the ALJ erred in finding that the objective medical evidence did not support Plaintiff's subjective complaints.

Defendant counters that the ALJ properly found that the objective medical evidence did not support Plaintiff's allegations of disabling pain. Additionally, Defendant argues the ALJ properly found that Plaintiff's non-compliance with the prescribed treatment for his allegedly disabling conditions undermined his allegations of disabling symptoms. Finally, Defendant contends that Plaintiff's testimony that he complied with treatment was contradicted by his own testimony and is a valid basis to reject his testimony.

"An ALJ is not required to believe every allegation of disabling pain or other non-

exertional impairment." Orn, 495 F.3d at 635 (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible. (AR 23.) The ALJ considered that Plaintiff had a fairly good work history within the past relevant 15 years. (AR 24, 98-99.)

However, the ALJ found that Plaintiff was noncompliant with treatment recommendations including medications, weight loss, and exercise. (AR 24.) Plaintiff argues that the ALJ erred making an adverse credibility finding based upon his weight loss and exercise as he was doing all that he could given his level of pain. The record does reflect that Plaintiff did make some efforts at weight loss and exercise. (AR 167, 168, 241, 242.) But, the record also reflects failure to comply with treatment for gout (AR 177, 186, 243, 261), and failure to comply with treatment for high blood pressure (AR 166, 173). The ALJ may base an adverse credibility finding on an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Molina, 674 F.3d at 1113. The ALJ's finding that Plaintiff failed to comply with treatment is a clear and convincing reason for the adverse credibility finding.

Further, the ALJ noted that Plaintiff had only received conservative treatment for his pain and was no longer taking his narcotic pain medication. (AR 24, 360-361.) Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the impairment. Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ's finding that Plaintiff had only received conservative treatment and was no longer taking his opioid pain medication was a clear and convincing reason for the adverse credibility finding.[3]

The ALJ also found that the objective medical evidence did not show a physiological

---

[3] To the extent that Defendant argues that Plaintiff's testimony during the hearing that he was taking his medication was a clear and convincing reason to support the adverse credibility finding since he contradicted his own testimony, the ALJ did not cite this as a reason. While the Court may draw reasonable inferences from the ALJ's opinion, Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989), it cannot consider Defendant's post hac rationalizations. "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991). Therefore, although Plaintiff's testimony at the September 1, 2014 hearing may have provided a valid basis for the ALJ to use for an adverse credibility finding, the ALJ did not do so and the Court cannot affirm the adverse credibility finding based conflicts in the hearing testimony.

basis for the extreme pain and limitations alleged. (AR 25.) The determination that a claimant's complaints are inconsistent with clinical evaluations can satisfy the requirement of stating a clear and convincing reason for discrediting the claimant's testimony. Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297 9th Cir. 1999). The ALJ properly considered this evidence in weighing Plaintiff's credibility. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ also found that Plaintiff's activities of daily living could not be objectively verified with any degree of certain and that it was difficult to attribute the degree of limitation to Plaintiff's medical condition rather than other factors. (AR 24-25.) The ALJ erred by failing to identify how the daily activities activity contradicted Plaintiff's testimony. Orn, 495 F.3d at 639. Further, the Plaintiff proffered a reason that his blood tests were negative for opiates but positive for marijuana. But Plaintiff explained that this was because he was using medical marijuana to control his pain. Therefore, this is not a clear and convincing reason to reject Plaintiff's credibility. However, since the ALJ provided other clear and convincing reasons for the adverse credibility finding any such error is harmless. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011).

The ALJ provided clear and convincing reasons for the adverse credibility finding that are supported by substantial evidence in the record.

**D.     The Step 5 Finding is Supported by Substantial Evidence**

Plaintiff argues that the ALJ erred in relying on the VE testimony to determine that Plaintiff could perform other work in the national economy. Plaintiff contends that because the hypothetical presented to the VE did not contain the limitations opined by Dr. DeZubiria it was necessarily incomplete.

Defendant counters that since the ALJ properly rejected the opinion of Dr. DeZubiria, the ALJ did not err in relying on the testimony of the VE.

At Step Five, the burden shifts to the Commissioner "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir.1995); see also 20 C.F.R. § 416.920(g). At this step, the ALJ considers potential occupations that the claimant may be able to perform. Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015); see 20 C.F.R. § 416.966.

In determining if a claimant is disabled, the ALJ can rely on the testimony of a vocational expert who testifies about specific occupations that a claimant is able to perform based on his residual functional capacity. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir.2009); 20 C.F.R. § 416.966(e). The hypothetical question that is posed to the vocational expert must contain all the limitations that the ALJ found credible and supported by substantial evidence in the record. Bayliss, 427 F.3d at 1217. If the hypothetical question does not reflect all of the claimant's limitations then the vocational expert testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009).

The ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (quoting Osenbrock v. Apfel, 240 F.3d 1157, 1164–65 (9th Cir.2001)). The Ninth Circuit has held that an ALJ may translate assessed limitations into a residual functional capacity assessment without repeating each functional limitation verbatim. Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding that an ALJ's RFC assessment that a claimant could perform simple tasks adequately captured restrictions related to concentration, persistence, or pace, because the assessment was consistent with the medical evidence). The RFC findings need not be identical to the relevant limitations but must be consistent with them. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010).

The ALJ found that Plaintiff had the residual functional capacity to occasionally lift and carry 10 pounds, and frequently less than 10 pounds; stand and or walk for 2 hours and sit for 6 to 8 hours in a normal 8-hour workday with normal breaks. (AR 22.) Plaintiff needs a cane for

long distances and uneven terrain and can perform occasional balancing, stooping, kneeling, crouching, crawling, and climbing, but must avoid concentrated exposure to hazards.  (AR 22.)

At the September 1, 2014 hearing, the ALJ proffered a hypothetical of an individual who is capable of occasional lifting and carrying of 10 pounds and frequently less than 10 pounds; stand and/or walk for 2 hours and sit for 6 hours in an 8 hours with normal breaks; requires a cane for long distances or on uneven terrain; capable of occasional balancing, stooping, kneeling, crouching, crawling, and climbing; and needs to avoid concentrated exposure to hazards.  (AR 370-371.)  The hypothetical presented to the VE was consistent with the residual functional capacity.  The ALJ did not err in relying on the VE testimony in finding that there were jobs in the national economy that Plaintiff was able to perform.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in determining the weight to be provided to the medical opinions, making an adverse credibility finding, or at step 5 in relying on the hypothetical presented to the VE.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Alejandro Ibarra.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  __**January 10, 2018**__                    _____
                                                   UNITED STATES MAGISTRATE JUDGE